# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>    Plaintiff,<br>vs.<br>Christopher Bryan Garcia,<br>    Defendant. | CR-09-0386-TUC-JMR-DTF<br><br>**REPORT AND RECOMMENDATION** |

Defendant Christopher Bryan Garcia moves this Court for an order precluding evidence of DNA statistics. (Doc. No. 91.) The government responded in opposition to the motion. (Doc. No. 100.) Defendant Garcia has not filed a reply. This matter came before the Court for a report and recommendation as a result of a referral, pursuant to LRCrim 5.1. An evidentiary hearing was held on June 2, 2010. Having now considered the matter, the Magistrate Judge recommends that the District Court, after its independent review, DENY Defendant's Motion to preclude evidence of the DNA statistics.

On March 11, 2009, Defendant was indicted and charged with two counts of aggravated sexual abuse pursuant to 18 U.S.C. § 2241(c). On August 11, 2009, in order to compare the DNA of the semen detected during the victim's sexual assault examination with the DNA of Defendant, the government obtained buccal swabs of Defendant's DNA. Subsequent examination of the DNA thus obtained matched the DNA profile of the semen. Arizona Department of Public Safety Criminalist Stacie Raymond-Bednarz performed the

analysis, and in asserting the statistical relevance of her analysis pointed out that the approximate random incidence of the DNA profile obtained from the semen was:

- 1 in 1.1 trillion Apache Native Americans;
- 1 in 72 billion Minnesota Native Americans; and
- 1 in 2 trillion Navajo Native Americans.

(Doc. No. 91, Ex. 1-1.) The government presented criminalist Raymond-Bednarz's testimony at the hearing to support the evidence.

In his Motion to Preclude Evidence of DNA Statistics, Defendant argues that the government's DNA statistics must be precluded as irrelevant, misleading, inaccurate, unreliable, and without qualified expert opinion. (Doc. No. 91 at 3.)

**1. The DNA statistics are not irrelevant.**

Defendant argues that the DNA statistics are irrelevant because he is neither Apache, Minnesota, nor Navajo Native America. (Doc. No. 91 at 3.) Typically, DNA statistics are provided for only the most common racial groups: Caucasians, Blacks, and Hispanics. (Doc. No. 100 at 3.) The government's expert witness testified that no statistics for the Tohono O'odham tribe are available, and that she used Navajo and Apache statistics pursuant to Arizona Department of Public Safety policy. The witness further testified that, because Native American populations are more homogenous than Caucasians, Blacks, or Hispanics, the use of the Native American statistics is more favorable to Defendant than the standard practice of examining only Caucasian, Black, and Hispanic statistics. Defendant presented no expert witness testimony in rebuttal.

**2. DNA statistics are admissible generally.**

Defendant further argues that the government's DNA statistics must be precluded as misleading, inaccurate, and unreliable.[1] In *United States v. Chischilly*, ruling on the

---

[1] Defendant relies on a Washington state case in which the court held that testimony that a DNA profile "would occur in only one Caucasian in 19.25 billion [and, because] this figure is almost four times the present population of the Earth, the match was unique" was improper. *State v. Buckner,* 890 P.2d 460, 462 (Wash. 1995). The Court is not persuaded by this argument, and the *Buckner* decision is not binding on this Court. *Buckner* applies the *Frye* standard for admissibility of evidence, instead of the modern *Daubert* standard. *Id.* at 462. Unlike the expert in *Buckner*,

2

admissibility of such statistics in the case of a Navajo Native American, the Ninth Circuit Court of Appeals found that it was proper to admit "evidence of a DNA match and testimony regarding the probability of a coincidental match." *United States v. Chischilly,* 30 F.3d 1144, 1153 (9th Cir. 1994).

Defendant attempts to distinguish *Chischilly* by arguing that the *Chischilly* defendant was Navajo, while he is Tohono O'odham. (Doc. No. 91 at 4.) However, as the government points out, *Chischilly*'s applicability is not restricted to Navajos; the statistics introduced in the case were "of the probability of a similar match between the DNA of a randomly selected *American Indian*," not the probability of a match with a randomly selected Navajo. (Doc. No. 100 at 5.)

Defendant claims the DNA statistics do not meet the *Daubert* standard for admissibility. (Doc. No. 91 at 6.) Requiring the government to show compliance with the individual requirements of the *Daubert* test is unnecessary, because the Ninth Circuit case law shows that DNA statistics are indeed admissible under *Daubert*. *See United States v. Wright*, 215 F.3d 1020, 1023 (9th Cir. 2000); *United States v. Hicks,* 103 F.3d 837, 846-47 (9th Cir. 1996) (*overruled on other grounds by United States v. W.R. Grace,* 526 F.3d 499 (9th Cir. 2008)); *Chischilly*, 30 F.3d 1144, 1153-56 (9th Cir. 1994). Defendant has presented no evidence to support his position that these cases were wrongly decided.

To the extent the possibility of an error in DNA testing may call into question the reliability of DNA statistics, the Ninth Circuit has held that the possibility of such error goes to the weight, not the admissibility, of such evidence. *See Chischilly*, 30 F.3d at 1153, 1154.

**3. The DNA statistical evidence is not without qualified expert opinion.**

Defendant argues that the government's expert witness, criminalist Raymond-Bednarz, is not educated as a statistician and therefore is not qualified to testify as to any interpretation of the DNA statistics. (Doc. No. 100 at 6.) In its response, the government argues that Raymond-Bednarz *is* qualified to interpret the statistics, because she is educated

---

Raymond-Bednarz did not make any conclusive statements as to whether or not the match was unique; she merely gave the statistics themselves. *Id.*

to perform and interpret DNA comparisons, and statistical analysis is a necessary component of such. (Doc. No. 100 at 6.) Indeed, formal "education" in a given subject is not the only means by which an expert witness may become qualified to testify as to that subject. Rather, a witness becomes qualified by "knowledge, skill, experience, training, *or* education." Fed. R. Evid. 702 (emphasis added).

Furthermore, case law shows that Raymond-Bednarz is qualified. Criminologists with DNA expertise have been allowed to testify as to DNA statistics in similar circumstances. *See United States v. Wright*, 215 F.3d 1020, 1023 (9th Cir. 2000); *Smith v. Curry*, 580 F.3d 1071, 1074-75 (9th Cir. 2009). In *Curry*, a criminologist not trained as a statistician was allowed to testify, relying on statistical methods to calculate that one out of every 1,450 African-Americans, one out of every 19,500 Caucasians, and one out of every 17,500 Latinos would have the same combination of genetic traits found in the defendant's DNA and in the sperm sample. 580 F.3d at 1074. In *Wright,* a DNA expert not trained as a statistician was allowed to testify that the probability that the DNA of a Black individual selected at random would match the DNA recovered from the crime scene was approximately one in 1.3 billion. 215 F.3d at 1025.

**Recommendation**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court DENY Defendant's Motion to Preclude Evidence of DNA Statistics. (Doc. No. 91.) Pursuant to agreement of the parties to waive the fourteen days allowed for objections (Doc. No. 107), service and filing of written objections shall be done on or before June 10, 2010. If objections are not timely filed, they may be deemed waived.

DATED this 3rd day of June, 2010.

D. Thomas Ferraro
United States Magistrate Judge